

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY MICHAEL GREEN, c/o Alphonse A. Gerhardstein 617 Vine Street  Room 1409 Cincinnati, OH  45202, | : : : | Case No.: 03CV0906 JUDGE GWIN CIVIL COMPLAINT AND JURY DEMAND |
| Plaintiff | | |
| | : | MAG. JUDGE GALLAS |
| v. | : | |
| CITY OF CLEVELAND 601 Lakeside Avenue Cleveland OH 44114 | : : | |
| And | : | |
| CLEVELAND CLINIC FOUNDATION c/o Statutory Agent 9500 Euclid Ave., TT-33 Cleveland, OH  44195 | : : | |
| And | : | |
| LOU DEGROSS 7736 Harley Hills Dr. North Royalton, OH  44133-3662 | : : | |
| And | : | |
| ROBERT L. BECK, Jr. 3422 Beaver Trail E. Aurora, OH  44202-8528 | : : | |

| | |
|---|---|
| And | : |
| **JOSEPH SEROWICK**<br>**601 Lakeside Avenue**<br>**Cleveland OH 44114** | :<br><br>: |
| And | : |
| **ANDREA F. BOLTON fka**<br>**ZBYDNIEWSKI**<br>**115 Signore Dr.**<br>**Russellville Al 35653-5750** | :<br><br>:<br><br>: |
| And | : |
| **JAMES DRAPER**<br>**601 Lakeside Avenue**<br>**Cleveland OH 44114** | :<br><br>: |
| And | : |
| **DANA CHAVERS**<br>**2163 East 22nd Street**<br>**Cleveland OH 44115** | :<br><br>: |
| And | : |
| **JANE DOE AND JOHN DOE 1-10,** | : |

**Defendants**

## I. PRELIMINARY STATEMENT

1. This civil rights action challenges unconstitutional actions that deprived Anthony Michael Green of a fair trial and forced him to suffer thirteen years in prison for a rape that he did not commit. Only after years of delay was Mr. Green able to secure a DNA test on the evidence. (Exhibit A, DNA Report.) That test led to his exoneration and release from prison. Since his release the actual perpetrator has surrendered, confessed to the crime and been confirmed as the perpetrator through DNA testing. On November 4,

2

2002, Michael Green was declared by the Cuyahoga County Common Pleas Court to be a "wrongfully imprisoned individual." (Exhibit B, Order.)

2. The City of Cleveland, Cleveland Clinic Foundation Center and their agents caused Mr. Green's false arrest, malicious prosecution, unfair trial, and wrongful conviction by committing unconstitutional and tortious acts, including (1) conducting improperly suggestive identification procedures that led the rape victim to falsely identify Mr. Green as the perpetrator; (2) the fabrication of evidence against Mr. Green, including falsely inculpatory serology results and so-called "admissions" Mr. Green never made; and (3) conspiring to convict Mr. Green although they knew or should have known that he was innocent. Mr. Green brings these claims under federal law and state law. He seeks damages and attorney fees, knowing that he can never recapture his young adult life. Mr. Green, who is black, also seeks through this lawsuit to deter law enforcement officers and police agencies from practices that cause false accusations and convictions of young black men for crimes they do not commit.

## II. JURISDICTION

3. Jurisdiction over the federal civil rights claims is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367(a). Venue is proper in this Division.

## III. THE PARTIES

4. Plaintiff Anthony Michael Green has at all times relevant to this action been a resident of the State of Ohio. His formal name is Anthony Green. At all times relevant to this action he used the name Michael Green.

5. Defendant City of Cleveland is a municipality organized under the laws of the

3

State of Ohio.

6. Defendant Cleveland Clinic Foundation Center is a quasi-governmental entity acting under color of law for all purposes related to this case.

7. Defendant Lou DeGross was at all times relevant to this lawsuit a law enforcement officer employed by the Cleveland Clinic Foundation. He is sued both individually and in his official capacity.

8. Defendant Robert L. Beck, Jr. was at all times relevant to this lawsuit a law enforcement officer under contract with the Cleveland Clinic Foundation Center. He is sued both individually and in his official capacity.

9. Defendant Andrea Bolton, f/k/a Zbydniewski, was at all times relevant to this lawsuit employed as a law enforcement officer for the City of Cleveland. She is sued both individually and in her official capacity.

10. Defendant Joseph Serowick was at all times relevant to this lawsuit a serologist employed by the City of Cleveland. He is sued both individually and in his official capacity.

11. Defendants James Draper and Dana Chavers served as defense counsel at the trial of plaintiff Michael Green.

12. Defendants John Doe and Jane Doe 1-10 are various unknown law enforcement officers, supervisors and employees of the Cleveland Clinic and the City of Cleveland who conspired with the defendants and/or committed the unconstitutional and tortious acts that led to the false arrest, malicious prosecution, unfair trial and wrongful conviction of Michael Green for the rape of Jennifer Tennant.

13. At various places in this complaint, the City of Cleveland, Cleveland Clinic,

4

Lou DeGross, Robert Beck, Andrea Bolton, and Joseph Serowick are collectively referred to as the "government defendants." James Draper and Dana Chavez are collectively referred to as the "attorney defendants."

## IV. FACTS

### A. A Crime of Rape

14. On May 29, 1988, Jennifer Tennant, a white woman, was a cancer patient in Room 524 at the Cleveland Clinic Inn. The Inn is a hotel that served patients of the Cleveland Clinic Foundation.

15. At 10:00 p.m. that evening Rodney Rhines, an African-American man, forced his way into the room of Jennifer Tennant, raped her by forcing vaginal intercourse, and stole money. After the rape, Rhines wiped his penis with a washcloth from the room.

16. Approximately one hour after Mr. Rhines left her room, Ms. Tenant notified the Cleveland Clinic police of the crime.

### B. False Accusation of Michael Green

17. Defendant Robert L. Beck of the Cleveland Clinic Foundation Center police responded to Room 524 to investigate the crime. He heard Ms. Tennant provide a description of her assailant. She stated that the perpetrator told her his name was "Tony," and that he was an African-American man, 5'7" tall, weighed 165 pounds, medium build with pock marks and pimples, had short hair with a black "do-rag" and cap over it, black tee shirt with cut-off sleeves, gray pleated pants and looked to be 23 years old.

18. Defendant Andrea Bolton and other officers employed by the City of Cleveland Police Department also responded to investigate the crime.

19. During the investigation, defendants confiscated for forensic testing the

5

washcloth Mr. Rhines to wipe his penis after the rape.

20. After hearing the description of the perpetrator, defendant Beck called the Cleveland Clinic dispatcher, Tom Hinkle, who promptly volunteered that they should investigate plaintiff Michael Green, a former Clinic Inn employee, as a prime suspect.

21. In fact, plaintiff Michael Green did not rape Ms. Tennant and had no connection at all with the crime perpetrated by Mr. Rhines.

22. Within ten minutes of the interview of the crime victim and speaking to the dispatcher, the responding officers considered plaintiff Michael Green to be a suspect.

23. Plaintiff Michael Green is an African-American male who had previously worked at the Cleveland Clinic Inn. He was no longer an employee on May 29, 1988.

24. The victim was taken to Mount Sinai Medical Center where a "rape kit" was processed, including a vaginal swab that contained a mixture of her vaginal fluids and Rhines's semen.

25. Approximately two days after the rape, defendant Bolton presented Ms. Tennant with a series of small identification photos. One photo – Michael Green's – was extensively scratched under-exposed (dark).

26. Ms. Tennant was not able to identify Michael Green from this first collection of photographs.

27. Soon thereafter defendant DeGross presented Ms. Tennant with a second collection of photographs. Only one individual from the first photo array – Michael Green – also had his photograph included in this second photo array.

28. This second photo array consisted of mug shots with a facial view and profile of each person. Placards listing the height, weight and age of the individuals were

6

present on each photo. The placard of Michael Green matched the information provided by Ms. Tennant more closely than any of the other photos in the array.

29. During the course of the second photo session defendant DeGross, referring to plaintiff's photo, stated that, "This guy's name is Anthony, Tony." Ms. Tennant misidentified Michael Green as the perpetrator of the crime as a result of defendants' unduly suggestive identification procedures.

30. For example, the repetition of only Mr. Green's photo in this second photo array unduly suggested to Ms. Tenant that she should identify Mr. Green as the perpetrator. The failure to use photos of persons whose placard information also matched the description provided by Ms. Tennant unduly suggested to Ms. Tennant that she should identify Mr. Green as the perpetrator. The statement to Ms. Tennant that Mr. Green's name was "Tony" unduly suggested to Ms. Tennant that she should identify Mr. Green at trial as the perpetrator. These actions by defendants irreparably tainted Ms. Tennant's later in-court identification of the plaintiff.

## C. Michael Green Denies Committing the Crime, Turns Himself In, and Volunteers for Scientific Tests

31. In early June of 1988, an employee of the Clinic warned Michael Green that he was rumored to be a suspect in a rape at the Inn.

32. After learning this news, plaintiff went to the Clinic in an effort to explain that he had nothing to do with the crime. He spoke with defendant DeGross. Mr. Green denied all involvement in the crime and offered to submit to any scientific tests available to the investigators. Plaintiff Green voluntarily submitted blood and saliva samples for comparison to the forensic evidence found on the washcloth and in the victim's "rape kit."

7

33. Mr. Green requested an in-person line-up but defendants refused.

34. Mr. Green heard nothing further regarding the case until he received an indictment for rape and robbery in the mail in July of 1988.

35. Upon information and belief, the government defendants knowingly, recklessly, and with deliberate indifference, failed to investigate leads indicating that Mr. Green had not committed any crime, including, for example, his alibi and the fact that fingerprints found at the scene were not his.

## D. Inculpatory Forensic Evidence Fabricated and Exculpatory Forensic Evidence Suppressed and Ignored

36. Defendant Serowick knowingly prepared false forensic evidence that was used to establish probable cause for the arrest of plaintiff Michael Green, and later caused his conviction. Specifically, Serowick conducted conventional serological tests using the ABO and PGM genetic marker systems (forensic DNA typing had not yet been instituted in his laboratory) on the washcloth and blood and saliva samples taken from Michael Green and the victim.

37. Serowick found a mixture of semen and the victim's vaginal secretions on the washcloth and reported that the ABO and PGM types on the mixed stain matched Mr. Green's genetic profile.

38. However, the ABO and PGM types found in the mixed stain from the washcloth were identical to the victim's genetic profile. It was clearly established in the forensic science community in 1988 that where the genetic profile of a mixed stain was identical to the victim, the victim's genetic markers were said to "mask" the genetic markers of the semen donor, and therefore conventional genetic marker typing was incapable of discriminating among possible semen donors. As a result, no conclusion

8

about the genetic profile of the semen donor could be drawn in this case. In other words, Serowick's analysis excluded no one as a potential semen donor.

39. Serowick knew that, based on the conventional genetic marker typing, 100% of the male population could have contributed the semen on the washcloth. However, he suppressed this scientific fact from the prosecutor and defense. Instead, he falsely reported that the washcloth stain matched Mr. Green's genetic marker type, and that only 16% of the black male population could have contributed the semen on the washcloth.

40. Upon information and belief, defendant Serowick documented these falsely inculpatory findings in a report and disclosed them to the prosecutor before trial for use in the prosecution.

41. Defendant Serowick acted purposefully and with deliberate indifference to Mr. Green's right to receive a fair trial.

42. The government defendants were able to secure three fingerprints from the perpetrator from the room where the rape occurred. Although those prints did not match plaintiff, the attorney defendants failed to pursue this important lead toward the true perpetrator.

### E. Admissions Fabricated

43. Michael Green never admitted the crime and never admitted any involvement in the crime. None of the interview records with Michael Green recorded any inculpatory admissions by him regarding the crime.

44. Defendant DeGross conspired with other law enforcement officers to fabricate evidence of admissions by Michael Green. These alleged admissions included, for example, the following false statements attributed to Green: (a) that he "could have

9

said [to Tenant] that his name was Tony and that this is going to hurt me more than it hurts you;" (b) that on the night of the rape he was drinking and had passed out on a porch and did not have any memory of his whereabouts on the night of the crime; and (c) that he had an alcohol problem and had been treated for it at a hospital. This evidence was relied on to establish probable cause to arrest Michael Green and was relied on by the prosecution in the presentation of the case to the jury.

45. Upon information and belief, at least one of these so-called admissions was falsely reported and disclosed to the prosecution for use against Mr. Green at trial.

46. Defendant DeGross and other law enforcement officers failed to disclose to prosecutors that these alleged admissions were fabricated, and that Michael Green had never uttered those words.

### F. Improper In-Court ID

47. As a result of the suggestive photo practices described above, the victim misidentified plaintiff at trial as the perpetrator of the rape.

48. Defendants knew that the in-court identification of plaintiff was in error.

### G. Wrongful Conviction And Conduct of Defense Counsel

49. At trial, the most important prosecution evidence was the victim's identification of Mr. Green, the falsely inculpatory serology results, and the inculpatory "admissions" the government defendants reported that in fact Mr. Green had never made.

50. The jury heard closing arguments and commenced deliberation on October 20, 1988. They returned a guilty verdict on the afternoon of October 21, 1988. Mr. Green was later sentenced to serve 25 years in prison for the rape he did not commit.

51. Defendant James Draper and Dana Chavez committed malpractice, and, acting with malicious purpose, in bad faith, or in a wanton and/or reckless manner, provided services well below those consistent with the standard of care required by law including but not limited to the following actions and omissions:

>    a. Defense counsel irreparably compromised the in-court identification of Michael Green by permitting him to sit in the courtroom during pretrial proceedings;
>
>    b. Draper knew about, but failed to interview several alibi witnesses, claiming that he did not have time to "knock on doors";
>
>    c. One alibi witness came to court but was not called to testify;
>
>    e. The false forensic evidence was not competently challenged;
>
>    f. The failure of the perpetrator's fingerprints to match those of Michael Green was not pursued;
>
>    g. One theme of the defense was that the perpetrator gave his name as "Tony;" and plaintiff always went by "Michael, " but defense counsel often called plaintiff "Tony" during the trial;
>
>    h. After the return of a guilty verdict the jury was polled and juror #1 stated that she did not agree with a conviction, Draper failed to seek an instruction guiding the jury on further deliberations when they returned to the jury room.

### H. Policies and Practices, Abuse of Power

52. The arrest and charges against the plaintiff were unlawful and unsupported by any probable cause.

53. The government defendants, individually and through the custom, policy or practice as set by the Cleveland Clinic and City of Cleveland have each acted intentionally, recklessly, and with deliberate indifference to the constitutional rights of the plaintiff.

54. The government defendants conspired to bring false charges against Michael Green and pursued actions in furtherance of that unlawful end.

55. The actions of the government defendants reflect an arbitrary abuse of government power, which shocks the conscience.

56. Policies, customs and practices of defendants City of Cleveland and the Cleveland Clinic were the moving force behind the constitutional violations suffered by the plaintiff.

57. Although their policymakers were on notice of the obvious need to train and supervise police in these areas, defendants City of Cleveland and Cleveland Clinic failed to train and supervise the individual police defendants and other officers involved in the investigation in proper identification, interrogation procedures, investigation of serious crimes, and forensic evidence preparation. As such, the municipal defendants were deliberately indifferent to the rights of citizens subject to identification procedures and investigation, including the plaintiff.

58. The government defendants' actions were based on the race and color of plaintiff, who is an African American with dark skin color.

59. The government defendants failed to provide law enforcement services to Michael Green on an equal basis to that of other citizens.

### I. Thirteen Years In Prison, Impact on Michael Green

60. As a result of his wrongful conviction, Michael Green was incarcerated from June of 1988 to October 18, 2001 for this crime that he never committed. On several occasions he appeared before the parole board. Each time he was asked to admit his guilt. Each time he denied committing the crime. Each time he was denied parole. When his parole was denied in 2000, the parole board wrote, "I feel you are putting too much emphasis for your continuance on your claim of innocence." Though he was pressured to admit his guilt, plaintiff never did so.

61. The extended incarceration of Michael Green proximately caused him to experience physical and psychic trauma, severe emotional distress and mental anguish, feelings of hopelessness, embarrassment, humiliation, indignities, degradation, fear, injury to reputation; permanent loss of natural psychological development, and numerous other physical, emotional and psychological injuries.

62. The extended incarceration of Michael Green proximately caused him to lose earnings; denied him access to and interfered with his ability to receive adequate medical care; and to suffer restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, relationships with family and friends, reading, television, movies, travel, enjoyment, and expression.

63. Based on the DNA exclusion, Michael Green was exonerated, released from custody, and his conviction vacated by order of Cuyahoga County Court of Common Pleas Judge Anthony O. Calabrese, Jr., on October 18, 2001. The prosecution finally terminated in his favor on November 4, 2002, when he was formally designated a

"wrongfully imprisoned individual." (Exhibit B.)

## VI. FIRST CLAIM FOR RELIEF - §1983

64. The government defendants have, under color of law, deprived plaintiff of clearly established rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution of which a reasonable person would have known. These rights include, but are not limited to, the right to due process of law and to a fair trial, equal protection, and the right to be free of unreasonable searches and seizures. Defendants violated these constitutional rights by, for example, conducting unduly suggestive identification procedures that caused the irreparable misidentification of Mr. Green, arresting Mr. Green without probable cause, failing to investigate, maliciously prosecuting by initiating and/or continuing a prosecution against him with malice and without probable cause, fabricating falsely inculpatory serology results and "admissions," and suppressing from prosecutors material exculpatory and/or impeachment information including the scientific fact that the serology results excluded no one, as well as that Michael Green never made any inculpatory admissions.

65. As a result of defendants' unconstitutional acts and omissions, Michael Green suffered the severe and ongoing damages described above.

## VII. SECOND CLAIM - §1983 CONSPIRACY

66. The government defendants, acting under color of law and in concert, agreed and conspired to violate Mr. Green's constitutional rights under the Fourth and Fourteenth Amendments, and undertook overt acts in furtherance of that goal, including fabricating evidence, suppressing exculpatory other evidence, and falsely accusing Michael Green of the rape of Jennifer Tennant.

67. As a result of defendants' unlawful conspiracy, Michael Green suffered the severe and ongoing damages described above.

### VIII. THIRD CLAIM – OHIO CONSITITUTION

68. The government defendants have engaged in acts and conspired to engage in acts that violated rights secured to the plaintiff by the Ohio Constitution.

### IX. FOURTH CLAIM - SPOLIATION OF EVIDENCE

69. The government defendants have willfully destroyed evidence related to the investigation of the rape of Jennifer Tenant, thereby disrupting plaintiffs' ability to pursue and present his claims in litigation regarding his conviction for her rape.

### X. FIFTH CLAIM – STATE LAW MALICIOUS PROSECUTION

70. The government defendants initiated and/or continued a prosecution against Mr. Green, with malice, and without any probable cause to believe he committed any crime against Jennifer Tennant, causing his unfair trial and wrongful conviction. The action ultimately terminated in Mr. Green's favor on November 4, 2002 when he was declared a "wrongfully imprisoned individual" by the Court of Common Pleas.

### XI. SIXTH CLAIM – STATE LAW CONSPIRACY

71. The government defendants conspired to arrest Mr. Green without probable cause, cause the victim to misidentify Mr. Green, maliciously prosecute him, and wrongly convict him of the rape of Jennifer Tenant. In furtherance of that conspiracy, the defendants committed the unlawful overt acts and omissions set forth above, which caused Mr. Green to suffer severe emotional, physical and pecuniary damages.

15

## XII. SEVENTH CLAIM – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. The government defendants' acts and omissions proximately caused Mr. Green to suffer serious emotional distress. Their official misconduct, which caused an innocent man to spend thirteen years behind bars is utterly intolerable in a civilized society. Nonetheless, the defendants committed these acts although they knew or should have known that they would cause Mr. Green to suffer serious emotional distress.

## XIII. EIGHTH CLAIM - MALPRACTICE

73. Defendants Draper and Chavers owed a duty of adequate legal representation to plaintiff Green, breached that duty through actions motivated by malicious purpose, bad faith, or in a reckless or wanton manner, by failing to conform to the standard required by law, and proximately caused damage to plaintiff as a result.

## XIV. JURY DEMAND

74. Plaintiff requests a jury on all claims triable to a jury.

## XV. PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that this Court:

A. Award plaintiff compensatory damages against defendants in an amount to be shown at trial;

B. Award plaintiff punitive damages against all defendants except the City of Cleveland in amount to be shown at trial;

C. Award plaintiff reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other applicable law;

D. Award plaintiff prejudgment interest and post judgment interest;

E. Award plaintiff such other and further relief, as the Court deems appropriate.

Respectfully submitted,

*/s/ A. Gerhardstein*

Alphonse Gerhardstein #32053
LAUFMAN & GERHARDSTEIN
Attorney for Plaintiff
617 Vine Street Suite 1409
Cincinnati, Ohio 45202
(513) 621-9100
Fax (513) 345-5543

COCHRAN NEUFELD & SCHECK LLP

Cocounsel for Plaintiff
99 Hudson Street, 8th Floor
New York, New York 10013
(917) 237-0338
Fax (212) 965-9084